UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CANDIE WHITEHURST,
individually and on behalf of herself
and others similarly situated,

    Plaintiff,

v.                                      Case No.:  2:20-cv-67-MRM

G & A RESTAURANT
MANAGEMENT, INC., JAMES P.
GYARMATHY and RON PHILLIPS,

    Defendants.
_____/

## ORDER

Pending before the Court is the parties' Joint Motion to Approve Settlement Agreement and Stipulation for Dismissal with Prejudice.  (Doc. 44).  Plaintiff Candie Whitehurst, Opt-in Plaintiff Vivian Card, Opt-in Plaintiff Joseph Joyner ("Plaintiffs"), and Defendants G & A Restaurant Management, Inc., James P. Gyarmathy, and Ron Phillips ("Defendants") request that the Court approve the parties' settlement and dismiss the case with prejudice.  (Docs. 44 at 1; 44-1 at 1).[1]  On June 11, 2021, the parties formally consented to proceed before a United States Magistrate Judge for all future proceedings, (*see* Doc. 38), and the case was reassigned to the Undersigned as the presiding trial judge, (*see* Doc. 40).

---

[1]  Page number citations to the docket refer to the CM/ECF pagination, not the page numbers listed at the bottom of any given document.

Accordingly, the Undersigned now has jurisdiction to enter a final order relating to the proposed settlement. (*See id*.).

After careful review of the parties' submission and the record, the Court orders that the joint motion (Doc. 44) is **GRANTED**.

## BACKGROUND

Plaintiff Whitehurst filed a one-count Collective Action Complaint against Defendants for violation of the Fair Labor Standards Act ("FLSA") on January 31, 2020. (Doc. 1). Specifically, she asserts that although Defendants purport to use a "fluctuating workweek method of pay with an incentive bonus directly tied to their hours worked," she, along with similarly situated employees, were not "paid a fixed salary for all hours that they worked each week." (*Id*. at 6, 7). Accordingly, Plaintiff Whitehurst alleges that Defendants did not, in reality, provide compensation on a fluctuating work week basis. (*Id*. at 7). As a result, Plaintiff Whitehurst and other similarly situated employees were not paid one and one-half times their regular rate for hours worked in excess of forty hours per week. (*Id*. at 7,8). On January 31, 2020, and September 20, 2020, respectively, Opt-in Plaintiff Card and Opt-in Plaintiff Joyner each filed a Consent to Join Collective Action and Be Represented by Morgan & Morgan. (Docs. 3, 34).

In the Collective Action Complaint, Plaintiff Whitehurst does not allege a specific sum of damages owed to her. (*See* Doc. 1). In her sworn answers to the Court's interrogatories, however, Plaintiff Whitehurst claims that she is owed

$11,006.75 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs." (*See* Doc. 19). Plaintiff Card claims entitlement to $547.64 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs." (*See* Doc. 20). Plaintiff Joyner claims entitlement to $8,870.50 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs." (s*ee* Doc. 37-1).

On March 30, 2020, Defendant G & A Restaurant Management, Inc. filed an Answer, expressly denying Plaintiff Whitehurst's allegations and asserting twenty-four affirmative defenses. (*See generally* Doc. 12). On May 13, 2020, Defendants Phillips and Gyarmathy each filed an Answer, denying Plaintiff Whitehurst's allegations and asserting twenty-four affirmative defenses. (*See generally* Docs. 23, 24).

On June 11, 2021, the parties formally consented to proceed before a United States Magistrate Judge for all future proceedings, (*see* Doc. 38), and the case was reassigned to the Undersigned as the presiding trial judge, (*see* Doc. 40). On July 8, 2021, the parties filed the instant joint motion. (Doc. 44).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir.

3

1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Court analyzes the proposed terms of the general release and settlement agreement below.

4

## ANALYSIS

I. **Bona Fide Dispute**

As a threshold matter, the Court finds that a bona fide dispute exists between the parties. As noted in the joint motion, "Plaintiffs claim[] an entitlement to unpaid overtime wages and Defendants maintain[] that Plaintiffs were paid all monies owed to them pursuant to a Fluctuating Work Week Contract." (Doc. 44 at 2). Accordingly, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

The Court addresses the monetary terms, non-cash concessions, and attorney's fees and costs separately below.

II. **Monetary Terms**

As noted above, Plaintiffs contend that Defendants failed to pay them proper overtime compensation for hours worked in excess of forty hours per week. (Doc. 1 at 9, 10). Although Plaintiff Whitehurst's Complaint does not allege a specific sum owed to her, in her sworn answers to the Court's interrogatories, Plaintiff Whitehurst asserts that she is owed $11,006.75 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs." (Doc. 19 at 2). Similarly, Plaintiff Card claims entitlement to $547.64 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs," (*see* Doc. 20), and Plaintiff Joyner claims entitlement to $8,870.50 in unliquidated overtime damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs," (s*ee* Doc. 37-1).

Under the terms of the proposed settlement agreement, Defendants agree to pay Plaintiff Whitehurst a total of $11,007.00, including $10,907.00 for "recovery of wages," and $100.00 "representing consideration for the terms as outline in Section[s] 5 and 6 of this Agreement." (Doc. 44-1 at 2). Paragraph 5 is a general release provision and Paragraph 6 is a confidentiality provision. (Docs. 44-1 at 2-4; 44 at 3). Defendants also agree to pay Plaintiff Joyner a total of $8,870.00, including $8,770.00 for "recovery of wages," and $100.00 "representing consideration for the terms as outlined in Sections 5 and 6 of this Agreement." (*Id*. at 2). Further, Defendants agree to pay Plaintiff Card a total of $548.00, including $448.00 for "recovery of wages," and $100.00 "representing consideration for the terms as outlined in Sections 5 and 6 of this Agreement." (*Id*.). Lastly, Defendants agree to pay $7,070.00 to "'Morgan & Morgan, P.A.' for its reasonable fees and costs." (*Id*.). Thus, the total amount Defendants are paying is $27,500.00. (*Id*. at 1).

In support of the reasonableness of the monetary terms of the agreement, the parties assert that:

> [T]here has been investigation and exchange of information to allow counsel for Plaintiffs and Defendants to evaluate the parties' claims and defenses and make recommendations to each party in agreeing upon the resolution of Plaintiffs' claims as set forth in their Agreement. After exchanging information and records, engaging in settlement negotiations, and in order to avoid the uncertainties of and costs of dispositive motions and trial, a compromise has been agreed upon with Plaintiffs receiving substantial recovery in comparison to their allegations.

(Doc. 44 at 6). The parties note that "each of the Plaintiffs will be receiving more than 80% of their alleged overtime wages." (*Id*.). Additionally, the parties claim that the terms of the proposed settlement agreement represent an "excellent outcome" in light of the "disputes that exist in this case and the recent change in the Department of Labor's Rule regarding fluctuating work week." (*Id*. at 7). Specifically, because the "Bonus Rule" allows employers to pay bonuses or other incentive-based pay beyond workers' fixed salaries when they are paid using the fluctuating workweek method, the parties acknowledge that the Court could potentially "determine that Plaintiffs are not entitled to any recovery" based on the "Bonus Rule." (*Id*.). In further support of the reasonableness and fairness of the monetary terms, the parties add that the proposed settlement agreement is free from "fraud or collusion." (*Id*.). Ultimately, the parties represent that "it is in their respective best interests to resolve this manner" given the risk of "expensive, protracted, and uncertain litigation." (*Id*.).

The parties also address Plaintiffs' waiver of liquidated damages. (*See* Doc. 44-1 at 1). The parties claim that because they "genuinely dispute [Plaintiffs'] entitlement to liquidated damages based on the 'Bonus Rule,'" the proposed settlement is reasonable and fair on such terms. (*Id*. at 7).

Pursuant to 29 U.S.C. § 216(b), "[a]ny employer who violates the provisions of section 206 or section 207 of this title *shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29

7

U.S.C. § 216(b) (emphasis added).  Importantly, a court may – in its discretion – reduce or deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission of failing to pay appropriate wages was in good faith and that the employer had a good faith belief that the act or omission was not in violation of the FLSA.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282 (11th Cir. 2008).  The test for establishing good faith and whether the employer had reasonable grounds for believing its act or omission was not in violation of the FLSA consists of both subjective and objective components.  *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991).  Satisfaction of the subjective "good faith" component requires the employer to "prov[e] that it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) (quotation omitted).  Accordingly, "[i]f the employer fails to prove that he acted with both subjective and objective good faith," the award of liquidated damages is mandatory.  *Id.*

       The Court finds that the parties' failure to include liquidated damages does not preclude approval of the proposed settlement agreement.  Specifically, Defendants claim that "their payment policy was legal, especially in light of 29 C.F.R. § 778.114(a)(5) which states '[p]ayment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any [k]ind is compatible with the fluctuating workweek method of overtime payment.'"  (Doc. 44 at 2).  Further, Defendants assert that Plaintiffs were in fact "paid all monies owed to them pursuant to a Fluctuating Work Week Contract." (*Id.*).  Under these circumstances, the Court

finds that (1) Defendants had good faith and reasonable grounds for believing their actions were not a violation of the FLSA and (2) both the subjective and objective components of the relevant inquiry are satisfied. *See Johnson v. Kauffman Tire, Inc.*, No. 6:17–cv–414–Orl–41TBS, 2017 WL 4271669, at *3 (M.D. Fla. July 17, 2017), *report and recommendation adopted*, 6:17–cv–414–Orl–41TBS, 2017 WL 4242525 (M.D. Fla. Sept. 22, 2017). Therefore, in light of the parties' averments as to the settlement discussions, their interest in minimizing future risks and litigation expenses, and the relatively small difference between Plaintiffs' alleged damages and the settlement sums, the Court finds that the monetary terms of the proposed settlement agreement are fair and reasonable. (*See id*. at 6-9).

### III.  Non-Cash Concessions

The proposed settlement agreement contains several non-cash concessions. A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v.*

*James C. Hall, Inc.*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-CV-409-ORL-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Court addresses each of the non-cash concessions made by the parties under the proposed settlement below.

### A. General Release

First, the proposed settlement agreement contains a general release, which provides, in relevant part, that Defendants are released from:

> [A]ll manner of actions, suits, proceedings, and causes of action, in law or in equity, whether foreseen or unforeseen, known or unknown, p[l]ed or unpled and of and from all direct or indirect debts, assessments, dues, claims, losses, damages, liquidated damages, judgments, executions, defaults, covenants, contracts, controversies, agreements, promises, attorneys' fees, costs, interest payments and expenses, accounts, bills, variances, trespasses, assignments, notes, leases, rights, liabilities, liens, obligations and demands of any kind whatsoever.

(Doc. 44-1 at 3). The provision states that the release includes, but is not limited to, the following claims:

> [A]ny claims of harassment, discrimination, and/or retaliation on the basis of sex, race, color, ethnicity, religion, national origin, pregnancy, disability, marital status or other protected class or activity under Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000 et seq.), the Civil Rights Act of 1866 and 42 U.S.C.A. § 1981, the Americans With Disabilities Act as amended (42 U.S.C. § 12101 et seq.), the Florida Civil Rights Act of 1992, Florida's Private Sector Whistleblower Act (§ 448.101, et. seq. Florida Statutes), and any other applicable local, state

>or federal law or constitutional provision; for violations of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), Section 24 of Article X of Florida's Constitution and the Florida Minimum Wage Act (§ 448.110, Florida Statutes), the Family and Medical Leave Act (29 U.S.C.A. § 2611 et seq.), the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.), and the Employee Retirement Income Security Act of 1974 as amended (29 U.S.CA §1.001 et seq.); all claims based in contract or tort law, including but not limited to claims for breach of contract, wrongful termination, assault, battery, infliction of emotional distress, libel, slander, invasion of privacy, fraud, breach of fiduciary duty, negligence, etc...; and any other claims based on local, state or federal law.

(*Id.*).

Notably, the general release is not limited to solely the FLSA, but, rather, broadly written to include any legal claim Plaintiff may have "arising on or before the date Plaintiffs sign this Agreement." (*See id.*).

General releases in FLSA settlement agreements are generally problematic. *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31, 2018). Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including forgone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-cv-1658-Orl-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). As the Court has noted, however, evaluating unknown claims is a "fundamental impediment" to a fairness determination. *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52. Indeed, the Court

typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims." *Shearer*, 2015 WL 2402450, at *3. Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible." *Id*. (quoting *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).

Notwithstanding these difficulties, such provisions may be accepted when the Court can determine that such a clause is fair and reasonable under the facts of the case. *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving such a general release, emphasizing that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement"); *see also Middleton v. Sonic Brands L.L.C.,* No. 6:13-cv-386-Orl-18KRS, 2013 WL 4854767, at *3 (M.D. Fla. 2013) (approving a settlement agreement that included a general release because the plaintiffs received separate consideration); *Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28, 2012 WL 6803586, at *2 (M.D. Fla. Dec. 19, 2012), *report and recommendation adopted*, No. 6:11-cv-1683-Orl-28, 2013 WL 85066 (M.D. Fla. Jan. 8, 2013) (approving a settlement agreement that included a general release where the case also involved non-FLSA claims and the employee signed a general release in exchange for a mutual release from employer).

In the case *sub judice*, the parties represent that each Plaintiff is receiving "$100.00 as independent consideration of [sic] a general release and confidentiality." (*See* Doc. 44 at 3). Further, the parties allege that "[t]he release is important to ensure that there will not be future litigation on events arising prior to approval." (*See id.*). The Court finds that the general release in the proposed settlement agreement is supported by separate consideration and that it is fair and reasonable for the reasons the parties urge. Accordingly, the Court approves the settlement notwithstanding the inclusion of a general release inuring to Defendants' benefit.

### B.   Confidentiality

The proposed settlement agreement also contains a confidentiality provision that states, in relevant part:

> Plaintiffs agree that the terms of this settlement are to be confidential, and that disclosure of the terms of settlement shall be restricted to those disclosures which are required by law . . . It is specifically understood and agreed that no release of information concerning this settlement will be made to the news media, nor will the settlement or any term thereof be published on any website or other media utilized by Plaintiffs, their attorneys, or other representative. The settlement amounts in Paragraph 3 include consideration for this clause . . . However, the Parties agree that this Agreement shall be filed with the District Court presiding over the Lawsuit as identified in Section 2(a) with the appropriate Motion to Approve this Agreement without violating this Section of the Agreement.

(Doc. 44-1 at 3-4).

Notably, "Courts within this circuit routinely reject such confidentiality and non-disparagement clauses contained in FLSA settlement agreements because they

13

'thwart Congress's intent to ensure widespread compliance with the FLSA.'" *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014)). Further, confidentiality provisions "undermine[] the Department of Labor's regulatory efforts to notify employees of their FLSA rights." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010). Moreover, such provisions are "inherently unenforceable due to the public filing of the settlement agreements containing the confidentiality and non-disparagement clauses." *Ramnaraine*, 2016 WL 1376358, at *3, *report and recommendation adopted*, 2016 WL 1305353 (citing *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12–CV–461–J–15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013)).

  The Court finds, therefore, that the confidentiality provision in the proposed settlement agreement must be rejected because it patently contravenes the FLSA and the Department of Labor's regulatory efforts. *See Ramnaraine*, 2016 WL 1376358, at *3, *report and recommendation adopted*, 2016 WL 1305353. Although the parties assert that the confidentiality provision is supported by independent consideration, (Doc. 38 at 2, 5), the Court still cannot approve the provision because the presence of consideration does nothing overcome the general concerns that attach to confidentiality in this context. *See id.* Additionally, the value and enforceability of the confidentiality provision is questionable based on the fact that the parties filed

their settlement agreement with the Court and it now appears in the public docket. *See Lavin v. Pierhouse-Ft Myers Beach LTD*, No. 2:18-cv-801-FtM-99MRM, 2019 WL 2178295, at *4 (M.D. Fla. Apr. 30, 2019), *report and recommendation adopted,* No. 2:18-cv-801-FtM-99MRM, 2019 WL 2173831 (M.D. Fla. May 20, 2019). Accordingly, the Court finds that the proposed settlement agreement cannot be approved so long as a confidentiality provision is included.

Notably, the Court has previously invoked a severability provision to strike similar provisions and approve an otherwise valid agreement, *see, e.g., Ramnaraine*, 2016 WL 1376358, at *2-3, *report and recommendation adopted*, 2016 WL 1305353, and the proposed settlement agreement here includes such a provision, (*see* Doc. 44-1 at 4). The severability provision expressly states:

> Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement and all other valid provisions shall survive and continue to bind the parties.

(*Id.*). No exception is made for the confidentiality provision. (*See id.*).

The Court invokes the severability provision here to strike the confidentiality provision of the parties' settlement agreement so that the settlement may be approved. Accordingly, Paragraph 6 of the settlement agreement (Doc. 44-1 at 3-4 ¶ 6) is stricken from the agreement and deemed invalid and unenforceable.

### C. Amendment Provision

Additionally, the proposed settlement agreement contains a provision that grants the parties leave to amend the agreement:

> No cancellation, modification, amendment, deletion[,] addition, or other changes in this Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by both Plaintiffs and an authorized representative of Defendants.

(Doc. 44-1 at 4). This Court has previously found that a similar provision cannot be approved because it "leaves 'the parties free to circumvent *Lynn's Food [Stores]* review through *post hoc* modifications of an already-approved agreement.'" *Dexheimer v. Enjoy the City N., Inc.*, No. 6:18-cv-1980-Orl-76EJK, 2020 WL 5822195, at *3 (M.D. Fla. Apr. 13, 2020) (quoting *Dumas v. 1 Amble Realty, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018)). For this reason, the Court cannot approve a settlement agreement "that is not in its final form" and has an "opportunity for amendment." *See id.* at *3 (internal quotation and citation omitted).

The Court has previously invoked a severability provision to strike such provisions and approve an otherwise valid agreement, *see, e.g., Wood v. Surat Invs., LLC*, No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2840565, at *4 (M.D. Fla. May 15, 2020), *report and recommendation adopted*, No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2838861 (M.D. Fla. June 1, 2020). The Court again invokes the severability provision here to strike the amendment provision so that the settlement may be

approved. Accordingly, the second sentence of Paragraph 8 of the settlement agreement (Doc. 44-1 at 4 ¶ 8) is stricken from the agreement and deemed invalid and unenforceable.

## IV.   Attorney's Fees and Costs

Finally, the proposed settlement agreement specifies that Defendants agree to pay a total of $7,070.00 to "'Morgan & Morgan, P.A.' for its reasonable fees and costs." (Doc. 44-1 at 2). The parties represent that "there is no correlation between the amount of monetary consideration being paid to Plaintiffs and the amount of attorneys' fees and costs being paid by Defendants on Plaintiffs' behalf." (Doc. 44 at 8). Additionally, the parties assert that the attorney's fees and costs were "claimed by Plaintiffs and their counsel separate and apart from the amounts sought by Plaintiffs for their underlying claims, and were negotiated independently." (*Id*. at 9).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's

17

> attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

Accordingly, the Court **ORDERS** the following:

1. The confidentiality and amendment provisions are hereby **STRICKEN** from the proposed settlement agreement (Doc. 44-1) as set forth above.

2. The parties' Joint Motion to Approve Settlement Agreement and Stipulation for Dismissal with Prejudice, (Doc. 44), is **GRANTED** to the extent that the proposed settlement agreement (Doc. 44-1), as modified by this Order, is **APPROVED** as a fair and reasonable resolution of the parties' bona fide dispute under the FLSA and this case is **DISMISSED** with prejudice.

3. The Clerk of Court is directed to terminate all deadlines and motions, and close the file.

4. Each party shall bear its own fees and costs except as set forth in the settlement agreement, (*see* Doc. 44-1).

**DONE** and **ORDERED** in Fort Myers, Florida on September 17, 2021.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties